ALTGELT v. AUE et al. (No. 5994.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 31, 1917. Rehearing Denied Nov. 28, 1917.)

1. WATERS AND WATER COURSES ⬩156(2) — EASEMENTS—USE OF WATER—CONSTRUCTION —"ALLOW."

Where the owner of land conveyed a portion thereof, by deed reciting, "I have further agreed to allow" the grantee, his heirs or assigns, "at all times, free access to and use of a running spring" on the portion retained, after which both parties used the water as their needs arose, the grantee acquired only an easement and not the exclusive right to the water, the word "allow" not meaning "grant."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Allow.]

2. DEEDS ⬩101—CONSTRUCTION—EVIDENCE— ACTS OF PARTIES.

Interpretation of a clause in a deed given it by the parties is relevant to explain its meaning.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by Geo. C. Altgelt against Herman Aue and others. From an order refusing temporary injunction, plaintiff appeals. Affirmed.

Geo. C. Altgelt, of San Antonio, for appellant. Carlos Bee, Ed. H. Lange, and Martin & Martin, all of San Antonio, for appellee.

SWEARINGEN, J. This is an appeal from an order refusing a temporary injunction.

Appellant's claim for the temporary injunction is founded upon an alleged grant of Leon Springs by Max Aue to George Plehwe, whose right appellant acquired by purchase, which right appellant alleged was being violated by appellees by using water from the spring for the purpose of operating a laundry. The evidence disclosed that some of the appellees were using 15 barrels of water from the spring each week for a laundry. The well is producing about 10 barrels of water an hour. Appellant has, without objection or interference, been permitted to use

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

all the water from the spring except the 15 barrels a week.

In 1854, Max Aue owned a tract of land, out of which he sold 108 acres by metes and bounds to George Plehwe on January 10, 1854. On the portion of the tract of land not sold, but retained by Max Aue, was situated Leon Springs. This spring was near the boundary of the tract sold to Plehwe. In the deed from Max Aue to Plehwe, a right to use a running spring, admitted to be Leon Springs, is expressed in the following words:

"And I have further agreed to allow the said George Plehwe, his heirs or assigns, at all times, free access to and use of the running spring near his S. E. corner in the remainder of the land."

It is admitted that appellees have whatever right to the spring that Max Aue retained after executing the deed to George Plehwe. As suggested by appellant, the only question for determination is, What right to the running spring did the deed convey to Plehwe?

[1, 2] Appellant insists that by the words, "allow * * * free access to and use of the running spring," the exclusive right to use all the water from the spring was granted. No words indicating "all" the water nor "exclusive" use are used. There is nothing in the context that gives to the word "allow" the meaning of the word "grant." There is nothing in the context that definitely determines what use was to be made of the running spring. The meaning of the sentence will therefore have to be ascertained from extraneous facts—among them, what use was contemplated by the parties? For instance, was it intended that Plehwe should irrigate with the water from the spring? Did he have a great many cattle? The use most probably meant was to supply the needs of George Plehwe at the time of the conveyance. Then again the interpretation given the sentence by the parties themselves after the execution of the deed will be relevant to explain the meaning. From the evidence it appears that Plehwe needed to use the water for domestic purposes, drinking, washing, and watering a few cows and teams. He had no large number of stock and no irrigation system. At the date of the deed, Max Aue had no other source of supply of water for his own domestic purposes nor for his cattle and horses, but depended entirely upon this spring for his own necessities. It further appears that Max Aue at that time had a garden and an orchard which were irrigated by the water flowing from this spring. These circumstances render it wholly improbable that Max Aue and George Plehwe intended that the deed should exclude Max Aue from the running spring on Max Aue's land.

The acts of the parties, for a number of years after the conveyance, show that they did not understand the sentence to exclude Max Aue from the spring, for Plehwe mere-ly used the spring to supply his ordinary domestic purposes and Max Aue used the bulk of the water for domestic purposes and for irrigation as he had previously done. This is accentuated by the suit between these original parties, which suit is cited by appellant. Max Aue contended he had merely allowed Plehwe a license to use the water and have access to the well, which license was revocable at his pleasure. The court determined, in so far as we are able to understand from the meager statement of that suit, that the right was not revocable; but did not undertake to determine the nature and the extent of the use. There seemed to be no dispute as to how much of the water Plehwe was to use nor for what purpose. No effort was made to deny Max Aue the right to use the water for domestic purposes nor for irrigation.

We are of the opinion that Aue's lessee did not infringe upon the rights of appellant by the use of 15 barrels of water a week, and that the trial court did not err in its order refusing a temporary injunction.

Affirmed.